IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>STEVE ALAN BRITTNER,<br><br>Defendant. | CR 16–15–M–DLC<br><br>ORDER |

Defendant Steve Alan Brittner filed a Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(C)(1)(A)(i) based on the "extraordinary and compelling" reason that he has terminal brain cancer. (Doc. 79.) The United States opposes the Motion. (Doc. 82.) For the reasons explained below, the Court grants the Motion.

## BACKGROUND

On September 13, 2016 the Court sentenced Brittner to 48 months in prison after he plead guilty to distribution of methamphetamine in violation of 21 U.S.C. § 846. (Doc. 65.) In January 2018, doctors diagnosed Brittner with a malignant brain tumor, and he underwent surgery in March 2018. (Doc. 80 at 4.) Brittner subsequently applied for compassionate release from the Bureau of Prisons (BOP) pursuant to 18 U.S.C. § 3583(c)(1)(A) and was denied. (Doc. 83 at 1–2.) In the

-1-

memorandum that accompanied his denial, the Assistant Director of the BOP indicated that his post-surgery cranial imagery did not reveal evidence of "tumor recurrence or progression." (*Id.* at 1.) The memo also indicated that Brittner had a life expectancy that exceeded his remaining term of incarceration. (*Id.*)

In October 2018, Brittner was evaluated by his oncologist for fatigue and weakness. (*Id.* at 4.) His prognosis at the time was "poor." (*Id.*) In November 2018, Brittner was evaluated again for weakness, fatigue, and worsening memory. (*Id.* at 6.) His prognosis was still "poor" and his oncologist discussed the possibility of hospice care. (*Id.*)

In December, the President signed the First Step Act into law. (Doc. 80 at 2.) As modified, 18 U.S.C. § 3582(c)(1)(A)(i) allows a sentencing court to modify a sentence when "extraordinary and compelling reasons warrant such a reduction." The United States Sentencing Guidelines provide that a terminal illness is one such "extraordinary and compelling" reason. U. S. Sentencing Guidelines Manual § 1B1.13 cmt. 1(A) (2018).

## DISCUSSION

This Court's duty is to impose a sentence that is "sufficient but not greater than necessary." 18 U.S.C. § 3553(a). This Court may reduce a term of imprisonment where "extraordinary and compelling" circumstances render a Court's previous sentence greater than necessary. *See* 18 U.S.C. § 3582(c)(1)(A).

In order to do so, an inmate must first exhaust his or her administrative remedies, and further demonstrate that he or she "is not a danger to the safety of any person or to the community," and that a reduced sentence "is consistent with the policy statement." *Id.*

The Sentencing Commission promulgated a policy statement that sets out the criteria for finding an "extraordinary and compelling" reason. U.S. Sentencing Manual § 1B1.13 (2018). One such circumstance occurs when the "defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required." *Id.* at § 1B1.13 cmt. 1(A) (2018).

As a preliminary matter, the Court finds that jurisdiction is proper because Brittner has exhausted his administrative remedies. He applied for compassionate release and was denied first in late August 2018, and again at the end of October 2018. This constitutes a "final administrative decision." 28 C.F.R. § 571.63(d).

Brittner asks this Court to reduce his term of imprisonment because he has served three quarters of his incarceration, he has terminal brain cancer and would like to benefit from end-of-life care near his family, and he is not a danger to the community. (Doc. 80 at 3, 5–7.)

The Government argues that this Court should not reduce Brittner's sentence

because "he cannot show that he has a terminal illness, as defined under the guidelines, nor can he show that his ability of self-care has been substantially diminished." (Doc. 81 at 2.) The Government believes that Brittner does not have a "terminal illness" within the meaning of the guidelines because his medical records "do not indicate that the tumor has metastasized." (*Id.* at 5.)

The Government's argument is premised on a misreading of the statute. Brittner does not need to show that his tumor has metastasized for his condition to be "terminal." The guidelines provide a number of examples of medical conditions that would meet the standard for a "terminal illness." A "metastatic solid-tumor cancer" is merely one. Others include "amyotrophic lateral sclerosis, end-stage organ disease, and advanced dementia." U.S. Guidelines Manual § 1B1.13 cmt. 1(A) (2018). These examples are by no means an exhaustive list of medical conditions that could be characterized as "terminal." *See, e.g., Federal Land Bank of St. Paul v. Bismarck Lumber Co.*, 314 U.S. 95, 100 (1941) ("the term 'including' is not one of all-embracing definition, but connotes simply an illustrative application of the general principle"); *United States v. Philip Morris USA Inc.*, 566 F.3d 105, 1115 (D.C. Cir. 2009) (explaining that including indicates a nonexhaustive list). The question is whether Brittner's condition is similar enough to the enumerated examples to fall within the guideline's definition.

Brittner was diagnosed with a brain tumor in January 2018, when he

-4-

presented with a new-onset seizure. Brittner's course of treatment at FMC Butler included craniotomy and resection of a 7.9 cm. tumor in March 2018 followed by chemotherapy and radiation. The post-surgical pathology identified the Defendant's tumor as a WHO Grade III left temporal anaplastic astrocytoma with IDH wild type and no 1p/19q co-deletion. (Doc. 83 at 1.)

In 1993, the World Health Organization (WHO) adopted a classification system based on the assumption that each type of brain tumor results from a specific cell type. Astrocytomas are graded according to the degree of their abnormality, with the most common grading system on a scale of I to IV. WHO grade III anaplastic astrocytomas are now each divided into IDH-mutant or IDH-wildtype. Am. Brain Tumor Ass'n, Glioblastoma and Malignant Astrocytoma 5 (2017). The Defendant's diagnosis indicates he suffers from an IDH-wildtype tumor, without mutant IDH. Grade III astrocytomas without mutant IDH are considered "pre-glioblastomas", having a poorer prognosis than IDH mutant tumors. *Id.* Furthermore, high-grade astrocytomas can be aggressive tumors, which, over time, usually recur, and when they do, may recur as a higher grade tumor. *Id.* at 17.

According to the BOP, as of August 22, 2018, Brittner's life expectancy was "likely to exceed 18 months." (Doc. 83 at 1.) Prognosis, which is reported in terms of median overall survival, can be variable. According to the American

-5-

Brain Tumor Association, median overall survival for adults with an anaplastic astrocytoma is about two to three years. Am. Brain Tumor Ass'n, *supra* at 19. However, the literature indicates that the Defendant's specific tumor carries with it a much shorter median overall survival of 1.0 to 1.3 years, Louis Burt Nabors M.D. et al., *NCCN Guidelines Insights: Central Nervous System Cancers*, 15 J. of the Nat'l Comprehensive Cancer Network 11 (Version 1.2017), or 12 months, Natsuki Hattori et al., *World Health Organization Grade I–III Astrocytomas Consist of Genetically Distinct Tumor Lineages*, 107 Cancer Sci 8, 1161 (2016).

Of importance, the treatment options available to Brittner have been exhausted. According to the last treatment note available to the Court, dated November 15, 2018, Brittner reported to his treating physician with subjective complaints of fatigue, worsening memory and intermittent weakness. (Doc. 83 at 6.) The plan on that date was to hold, or discontinue further therapy, and it was recommended to Brittner that he consider comfort measures, specifically hospice, which his treating oncologist "considered very reasonable due to worsening performance status." (*Id.*)

It is clear from the nature of his disease and his worsening condition as documented above, that Brittner's prognosis is grim, his disease is terminal, and the length of his life can be measured most likely in weeks, as opposed to months.

Second, the Government argues that Brittner cannot show an "extraordinary

and compelling" circumstance because his medical records do not indicate an inability to care for himself. In finding this necessary, the Government reads a conjunctive requirement into the guideline comment where none occurs. The statute provides that "extraordinary and compelling" reasons exist "under *any* of the circumstances set for below." U.S. Sentencing Guidelines Manual § 1B1.13 cmt. 1 (2018) (emphasis added). A "[m]edical [c]ondition" is one example of an "extraordinary or compelling" circumstance when a defendant satisfies *either* subsection (i) or subsection (ii), but he or she need not satisfy both.[1] That Brittner failed to show under subsection (ii) that he is suffering from some set of symptoms

---

[1] The precise language provides:

(1) Extraordinary and Compelling Reasons. Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below.

    (A) Medical Condition of the Defendant

        (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

        (ii) The defendant is
            (I)     suffering from a serious physical or medical condition,
            (II)    suffering from a serious functional or cognitive impairment, or
            (III)   experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

"that substantially diminished [his] ability" to care for himself is irrelevant, as is each of the other criteria listed in that subsection, so long as he can show that he has a terminal illness in satisfaction of subsection (i). As already discussed, Brittner's condition is terminal, making him eligible to receive a reduced sentence.

Finally, the Court is convinced that Brittner poses no safety risk to the community. Brittner is in an advanced stage of cancer and is wheelchair bound. (Doc. 80 at 6.) He is fatigued, weak, and his memory continues to worsen. (Doc. 80 at 4.) When released, Brittner will be cared for in the home of his fiancée and attended by his family members and hospice care. His fiancée's home has already been inspected by the United States Probation Office and determined to be an appropriate environment for his release. (Doc. 80 at 6.) Finally, Brittner will remain under the supervision of the Probation Office and subject to the terms of his supervised release. (Id. at 7.)

Having concluded that Brittner's terminal illness constitutes a "extraordinary and compelling" circumstance in accordance with the policy statement, and that he poses no safety risk to his community, the Court concludes that a reduction is proper under 18 U.S.C. § 3553(a).

IT IS ORDERED that Defendant Brittner's Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (Doc. 79) is GRANTED.

IT IS FURTHER ORDERED that Defendant Steve Alan Brittner, United

States Marshals number 16253-046, is RELEASED from his term of imprisonment to his term of supervised release. The United States shall take any appropriate steps to ensure the Bureau of Prisons executes this Order promptly and in compliance with 18 U.S.C. § 3624(d).

IT IS FURTHER ORDERED that the Clerk of Court shall provide a copy of this Order to the United States Marshals Service for the District of Montana, the United States Probation Office for the District of Montana, and the United States Bureau of Prisons.

DATED this 1st day of May, 2019.

_____
Dana L. Christensen, Chief Judge
United States District Court